UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 22-CR-14005-CANNON-MAYNARD

UNITED STATES OF AMERICA,

vs.

ZACHARY S. SPIEGEL,
　　　　　　　Defendant.
_____/

## DEFENDANT'S MOTION FOR POST-VERDICT JUDGMENT OF ACQUITTAL

Pursuant to Fed.R. Crim. Pro. 29(c) the Defendant moves for a judgment of acquittal on Count One of the Indictment.

PROCEDURAL HISTORY

The Defendant was indicted on two counts of attempting to induce, entice or persuade a minor to have sex in violation of 18 USC §2422(b). Jury trial commenced on March 28, 2022. At the close of the Government's case the defense moved for a judgment of acquittal as to both counts. That motion was denied. After more than five hours of deliberation, the jury returned a verdict on March 29, 2022. The Defendant was found Guilty of Count One and Not Guilty of Count Two.

FACTS

In a light most favorable to sustaining the verdict, the following facts were proven at trial:

On January 9, 2022, after watching YouTube videos of the television show "To Catch a Predator", A.S., a sixteen-year-old boy, decided to place a post on an internet website known as Whisper. In that post he posed as a girl looking to "hang-out". The original post indicated the girl was between 18 and twenty years old.

There is no dispute as to what transpired between the Defendant and this "girl". All of their discussions and texts were admitted into evidence at trial as Government Exhibit 14. The Defendant first contacted the girl at 4:19 p.m. (pg. 1, Gov. Ex. 14). Nearly two hours later, at 6:10 p.m., the girl texted that her name was Shayla. The Defendant responded with a selfie. He then asked what she liked to do for fun. Shayla responded that she liked to smoke. The Defendant followed up with, "You like to smoke and fuck?" and Shayla answered, "I do." When Defendant suggested they get together sometime, Shayla revealed for the first time that she was fourteen years old. (pg. 3, Gov. Ex. 14). The Defendant immediately said, "Well that's a problem." He then asked Shayla the age of the oldest person she had had sex with and she responded 27. He asked, "How? Where?" and she replied "In their car. I met them on this app." To which the Defendant responded, "I don't think I could. Sorry."

The two continued chatting and Spiegel asked for a photo. Shayla sent him one. He told her she was pretty. She volunteered that she was banned from Snapchat

for "sending". Spiegel asked "show me what you mean" and she said "No, I've learned from my mistakes."

At 8:30 Spiegel asked Shayla "How's your evening?" and she responded "Good I'm at the movies." Spiegel replied, "Nice. Should have said something. You could have met me in the back row." Shayla immediately told Spiegel she was alone and invited him to join her. She gave him directions to the theater. He described sex acts he would do to her and she responded that "I want that so bad right now." (pg. 7, Gov. Ex. 14). They continued to exchange graphic descriptions of what would happen when they met and Spiegel sent a photograph of his penis. Shayla responded to that photo with, "Looks so juicy" followed by three smiling emojis with hearts for eyes. (pg. 9, Gov. Ex. 14). Spiegel said it would take thirty minutes for him to get to the theater.

As it got later, Shayla increased her efforts to convince Spiegel to meet her, telling him: "Come pick me up its dark and I'm scared" and "The only open building is Wing Stop I went inside because I'm scared of being out here." (pg. 14-15, Gov. Ex. 14).

Spiegel never showed. Ultimately, he told Shayla to go home, that he had been stopped by police. Agent Urgo testified at trial that he found no evidence that Spiegel had been stopped by any local police that night.

3

## LEGAL ARGUMENT

From the outset of this trial, the defense argued that the Government would be unable to prove two elements of the charge: 1) that Spiegel had the intent to persuade, induce or entice Shayla into consenting to have sex; and 2) that Spiegel took a substantial step to accomplish the crime. The Government has failed to do so.

## INTENT

A close look at both the setting and chronology of initial events is important. The setting was a computer application called Whisper which is designed to allow users to engage in online chats anonymously. It automatically generates pseudonyms for users. Zachary Spiegel was assigned a "name" of Bull Hancock. Despite Whisper's promise of anonymity, in his first post, Spiegel revealed his true first name. In his second post he sent a selfie. Spiegel made no effort to disguise himself or remain anonymous. Whisper is not a website designed for, or catering to, adults seeking out children for sex.

A.S. testified that when he created the Shayla avatar on Whisper he described Shayla as 18-20 years old. Spiegel responded to that post. There is no evidence that Spiegel was actively seeking out minors for sex. (Compare to the chat rooms "Rent F Vry Yng" in *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004) or "Young Girls and Older Men Loving Each Other", Dady's [sic] Favorite and "Family Love is Best" in *United States v. Lee,* 603 F.3d 904 (11th Cir. 2010.))

The chronology of events is also important to note. Spiegel broached the topic of sex *prior* to be being informed that Shayla was fourteen. In response to his query, "Do you like to smoke and fuck?" Shayla immediately responded, "I do." (pg. 2, Gov. Ex. 14) That response certainly, at a minimum, implies an interest in sexual activity. Consistent with his stated purpose of "catching a predator", A.S. did not pretend to be coy or reluctant.

Spiegel obviously interpreted Shayla's response as expressing willingness to engage in sexual activity because he then suggested that they could get together sometime. It was only at that time that Shayla stated she was fourteen and Spiegel responded, 'Well that's a problem." Later he told Shayla, "I don't think I could."

The Eleventh Circuit has joined many other circuits to hold that a defendant must act with the specific intent to persuade, induce, entice or coerce a minor to engage in criminal sexual conduct. The underlying criminal conduct is the persuasion, inducement, enticement or coercion of the minor rather than the sex act itself. See *United States v. Yost*, 479 F.3d 815 (11th Cir. 2007), *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004). [emphasis added]

Two points are important here. First, when Spiegel initially asked about sex, he had no idea he was communicating with a minor. Shayla had not yet revealed her age. When he found out, he immediately said, that's a problem.

5

The second important point: Shayla needed no convincing. She was trying to catch a predator. She (at least implicitly) agreed to sex immediately upon being asked if she liked to smoke and fuck: "I do." After she revealed her age, Spiegel said "I don't think I could sorry." She texted back that she would be fifteen in a month and "I'm mature for my age." (pg. 4, Gov. Ex. 14). Spiegel made no effort to persuade, induce or coerce Shayla into consenting to sexual activity. Shayla needed no convincing. ("Why don't you come thru?" [pg. 6] "I want that so bad right now" [pg. 7] "I'll show you what I can do" [pg. 7] "OMG yess I can't wait" "You got me so horny." [pg. 7] "Come pick me up its dark and I'm scared" [pg. 14] "…I'm scared of being out here alone." [pg. 15]) Shayla was trying to catch a predator and said whatever came into her head to bait the hook. Shayla was the one doing the persuading in this case. Despite her pleading, Spiegel never took the bait.

## SUBSTANTIAL STEP

In order to sustain a conviction, the Government must prove that the Defendant took a substantial step toward the intended goal of inducing fourteen-year-old Shayla to engage in sexual activity with him. "To find that a substantial step was taken, the court must determine that the defendant's *objective acts* mark his conduct as criminal such that *his acts as a whole strongly corroborate* the required culpability." *Murrell* at 1288. [emphasis added]. "A 'substantial step' is 'more than mere preparation' but less than the last act necessary before' the crime is in fact

6

committed. This requirement 'prevents the conviction of persons engaged in innocent acts on the basis of a mens rea proved through speculative inferences, unreliable forms of testimony, and past criminal conduct." *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014) (internal citations omitted). The "defendant's acts, taken as a whole, must strongly corroborate the required culpability; they must not be equivocal." *United States v. McDowell*, 705 F.3d 426, 428 (11th. Cir. 1983).

Spiegel's own words are nothing if not equivocal. Upon learning Shayla's age Spiegel immediately responded, "That's a problem." After being told Shayla was sexually active, Spiegel responded, "I don't think I could. Sorry." These words certainly do not strongly corroborate the required culpability.

As to this count, Spiegel and Shayla only communicated for a relatively brief period of time, off and on over the course of one evening. Spiegel exchanged explicit descriptions of sex acts he would perform on Shayla. But "[t]here must be more than just explicit sex talk to support a §2422(b) conviction." *Howard,* at 421.

Spiegel sent Shayla a photograph of his penis. In *Howard,* the Fifth Circuit "disagree[d] with the district court's conclusion that Howard took a substantial step toward enticing a minor to engage in illegal sex simply by sending a sexually explicit photograph of himself and asking that it be shown to the girls." *Id*. at 425. In so ruling the Court relied, in part, on *United States v. Lee*, 603 F.3d 904 (11th Cir. 2010)

7

wherein the defendant sent of video of himself masturbating and that alone was not sufficient for a conviction.

Spiegel said he would come to the theater, but made no effort to do so. The Eleventh Circuit has held that travel to a meeting is unnecessary to sustain a conviction under 18 USC §2422(b). *Yost, supra.* However, in every reported case where the defendant agrees to meet, but does not, there is other overwhelming evidence that "strongly corroborates" the necessary mens rea.

For example, in *Yost*, the defendant was communicating with three different minors simultaneously, all of whom were played by one undercover officer. Over the course of approximately a week, Yost asked for photos of the girls, sent pictures of his penis, asked for descriptions of their bodies and graphically described what he would like to do with them. He agreed to meet "Lynn" at a McDonald's but failed to show up. Eight days later he did arrive at a scheduled meeting with "Candi" and was immediately arrested.

In affirming the conviction, the Eleventh Circuit pointed to the above conduct as evidence of a substantial step and concluded Yost "crossed the line from mere 'talk' to inducement." *Yost*, at 819. However, despite holding that "travel is not necessary to sustain such a conviction", Yost did in fact travel to a meeting with Candi and that travel was featured prominently in the opinion.

In *United States v. Lee*, 603 F.3d 904 (11th Cir. 2010) the defendant communicated with an undercover officer for approximately six months. During that time, he attempted to arrange sex with the agent's two daughters aged seven and twelve. Lee instructed the agent how to prepare the girls for sex, sent pictures and videos of his penis and requested nude photos of the children. He discussed with the agent traveling from his home in Georgia to California to meet with them. He never traveled.

A divided panel affirmed the conviction. The majority pointed to a laundry list of twenty-three items comprising the totality of Lee's conduct that they felt supported the conviction. *Id*. at 316. That list recited numerous conversations between Lee and the undercover agent, Lee sending photographs and videos of his own penis to be shown to the children and requesting explicit photographs of the children.

Although not stated in the opinion, given the lengthy time frame during which these conversations took place, it can be argued that Lee was using the agent to groom the children for Lee's future abuse. Lee (among other things) promised to send gifts to the girls; requested that they pose in explicit, obscene photos; inquired as to their menstrual cycles; and asked if they were on birth control. All of these things are consistent with grooming techniques and when considered in total establish a "substantial step" towards completion of the crime.

The dissent felt otherwise. "It is true that Mr. Lee asked for pornography; sent photographs of his genitalia; and masturbated on a webcam for the purported mother. However, I see no fact in this case demonstrating that Mr. Lee ever took a step to extend the relationship to Candi Kane or her daughters beyond the boundaries of his property in Georgia. For that reason, I do not believe there was proof that Mr. Lee took a substantial step towards enticing a child to engage in illicit sexual conduct…" Judge Martin acknowledged that travel is not required for a conviction under §2422(b) but, despite the conduct described above, wrote "my review of the jurisprudence of this circuit does not reveal any defendant convicted under section §2422(b) after having made so little effort to consummate the crime." at 920.

Zachary Spiegel made even less effort than Mr. Lee.

CONCLUSION

Zachary Spiegel did not go onto Whisper looking for an underage girl to have sex with. The profile of Shayla he responded to stated she was eighteen to twenty years old. He made no effort to hide his identity when he contacted Shayla, although Whisper is designed for anonymity.

He turned the conversation to sex *before* learning that Shayla was fourteen. When he did learn her age, his immediate response was, "That's a problem." Shortly after that he informed Shayla, "I don't think I could. Sorry."

Shayla was actively trying to "catch a predator". She said things calculated to accomplish that end, including expressing how eager she was to have a sexual encounter and later expressing how frightened she was waiting for him alone in the dark.

Despite those efforts by Shayla, Zachary Spiegel made no effort to join her at the theater that night. He took no substantial step that would strongly corroborate the existence of an intention to induce, persuade or entice a minor to assent to sex. The motion should be granted.

Respectfully Submitted,

*/s Donnie Murrell*

_____
**DONNIE MURRELL, ESQ.**
**FLORIDA BAR NO:  326641**
400 Executive Center Drive
Suite 201—Executive Center Plaza
West Palm Beach, FL  33401
Telephone:  561.686.2700
Facsimile:   561.686.4567
Email:  ldmpa@bellsouth.net

*/s Andrew B. Metcalf*

_____
**ANDREW B. METCALF, ESQ.**
**FLORIDA BAR NO:  0098590**
1245 20th Street
P.O. Box 2618
Vero Beach, FL  32961
Telephone:  772.569.1001
Facsimile:   772.569.1117
Email:  la@eaglelaw.com
Attorneys for Defendant Spiegel

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 8, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s Donnie Murrell*
_____
**DONNIE MURRELL, ESQ.**

## SERVICE LIST

**U.S.A. vs. ZACHARY S. SPIEGEL**
**CASE NO: 22-CR-14005-CANNON/MAYNARD**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Stacey Bergstrom, Esq.
Stacey.Bergstrom@usdoj.gov
Assistant United States Attorney
Southern District of Florida, Fort Pierce Division
101 South U.S. Highway 1, Suite 3100
Fort Pierce, FL 34950
Telephone: 772.293.0952
Attorney for Plaintiff, USA
Via Notice of Electronic Filing
Generated by CM/ECF