UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-14005-CR-CANNON/MAYNARD

UNITED STATES OF AMERICA

v.

ZACHARY S. SPIEGEL,

        **Defendant.**

_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR POST-VERDICT JUDGMENT OF ACQUITTAL</u>**

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby files its response in opposition to Defendant Zachary S. Spiegel's motion for post-verdict judgment of acquittal (DE56).

**PROCEDURAL HISTORY AND RELEVANT FACTS**

A federal grand jury in the Southern District of Florida returned an indictment charging the defendant with two counts of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b). (DE13). Following a two-day jury trial beginning on March 29, 2022, the defendant was found guilty as to Count One of the Indictment, which related to an incident on January 9, 2022, and not guilty as to Count Two, which related to an incident on January 18, 2022. (DE47).

As to Count One, the relevant evidence adduced at trial is as follows:

On January 9, 2022, two 16-year-old-boys in Fort Pierce, Saint Lucie County, Florida decided to create a social media profile for a fake 14-year-old girl, whom they named Shayla, on the social media platform Whisper. Using this Shayla account, the boys made a public post asking if anyone in the area wanted to hang out. (GX4). The defendant responded to Shayla's post in a private message that same evening, while the boys were at a movie theater in the Sabal Palms

1

Plaza in Fort Pierce. Despite the anonymous nature of the Whisper platform, the defendant sent Shayla a photograph of himself and used his real name, "Zakk." (GX14:2). The defendant asked Shayla what she liked to do for fun, and Shayla responded that she liked to "smoke." (GX14:3). In response, the defendant asked Shayla if she liked to "smoke and fuck," and suggested that the two "get together sometime." (GX14:3).

Shayla then informed the defendant that she was only 14 years old. (GX14:3). The defendant initially responded, "Well that's a problem," but then immediately asked Shayla, "What's the oldest you've fucked[?]" (GX14:3). When Shayla responded that she "only liked older guys" and had met with a few older men from the Whisper application, the defendant responded, "Interesting." (GX14:3). The defendant again demurred, stating, "I don't think I could." (GX14:4).

The defendant did not end the conversation there, however. Instead, he asked Shayla for a photograph of herself. (GX14:4). The boys behind the Shayla account sent the defendant a photograph of a random teenage girl that they had found in a Google Image search. (GX14:4). The defendant told Shayla she was "very pretty." (GX14:4).

Upon receiving this visual confirmation that Shayla was, in fact, a 14-year-old girl, the defendant continued the conversation and asked her what she was doing that evening. (GX14:6). Shayla mentioned that she was at the movie theater, and the defendant replied that she should have invited him to meet her in the back row and told her that it "[w]ould have been fun to finger [her] during [the movie]." (GX14:6-7). He continued to describe the sex acts he wanted to perform with Shayla in explicit detail. (GX14:7). Shayla told the defendant to stop unless he was really going to come meet her, and the defendant responded, "And what if I don't stop[?] And what if I actually will do it?" (GX14:7). The defendant asked Shayla if she would "slide that tight little pussy down on [his] thick cock in the theater," and "show [him] what [she] can do with those lips and [her]

2

tongue." (GX14:8). When Shayla responded, "Yes daddy," the defendant stated, "I'll definitely be your daddy." (GX14:8). He then sent Shayla a photograph of his erect penis and told Shayla she was "going to make daddy cum." (GX14:8). The defendant told Shayla his penis was "just begging to be stroked[, s]ucked[, and f]ucked." (GX14:9).

Shayla told the defendant that she would leave the movie to meet him if he came to pick her up, and the defendant responded that he would text her when he arrived in approximately 30 minutes. (GX14:9). The defendant asked Shayla for her phone number so they could text more easily. (GX14:9). The defendant repeatedly asked Shayla to send him another photograph, so he knew who he was looking for, but the boys behind the Shayla account were unable to satisfy this request because they did not have additional photographs of the same girl. (GX14:9, 12). At approximately 9:50 p.m., the defendant gave Shayla an estimated time of arrival of 10:19 p.m. (GX14:13).

At that point, the boys behind the Shayla account sought out a Fort Pierce police officer who was on patrol in the plaza parking lot and told him about their conversation with the defendant. The defendant never arrived at the theater. Instead, the defendant texted Shayla at 10:20 p.m. to tell her that he had just been pulled over on U.S. Highway 1 and that he would not be coming to their meeting. (GX14:15-16). The boys informed law enforcement of the text and, after providing their contact information to the officers, returned home for the evening.

The defendant continued to text Shayla that evening and the following day, January 10, 2022. (GX14:18-21). During these conversations, the defendant again discussed a physical meeting, although the plans never solidified. (GX14:20-21).

**ARGUMENT**

Pursuant to Federal Rule of Criminal Procedure 29(c), "[a] defendant may move for a judgment of acquittal, or renew such motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). A defendant challenging the sufficiency of the evidence faces a heavy burden. In deciding a post-trial motion for judgment of acquittal brought under Federal Rule of Criminal Procedure 29, the relevant question is whether, after viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, any rational trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Williams*, 390 F.3d 1319 (11th Cir. 2004); *see also United States v. Hernandez*, 433 F.3d 1328, 1335 (11th Cir. 2005) ("The evidence does not have to exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt."). The court may not overturn a verdict if there exists "any reasonable construction of the evidence that would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Wilson*, 788 F.3d 1298, 1308 (11th Cir. 2015) (citation omitted).

To establish an attempted violation of § 2422(b), the government must prove that the defendant "intended to cause assent on the part of a minor" to engage in sexual activity, and that he took a substantial step toward causing that assent. *United States* v. *Lee*, 603 F.3d 904, 914 (11th Cir. 2010) (internal quotation marks omitted). The government does not have to prove that the defendant acted with specific intent to engage in actual sexual activity with a minor or that he took a substantial step toward the sexual contact. *Id.*; *see also United States v. White*, 660 F. App'x 779, 786 (11th Cir. 2016) ("It is the persuasion, inducement, enticement, or coercion of the minor, rather than the sex act itself, that is prohibited by the statute."); *United States v. Yost*, 479 F.3d 815, 819 n.3 (11th Cir. 2007) ("[W]e are not required to find Yost acted with the specific intent to engage

4

in sexual activity."); *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004) ("[I]f a person *persuaded* a minor to engage in sexual conduct (e.g. with himself or a third party), without then actually committing any sex act himself, he would nevertheless violate § 2422(b).") (emphasis original); *United States v. Bailey*, 228 F.3d 637, 639-40 (6th Cir. 2000) ("While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves.").

A defendant takes a substantial step when his "objective acts mark his conduct as criminal and, as a whole, strongly corroborate the required culpability." *United States v. Yost*, 479 F.3d 815, 819 (11th Cir. 2007) (citations omitted). To sustain a conviction for an attempt to violate § 2422(b), the government must only prove that the defendant took some concrete step beyond "mere talk" that demonstrates his intent to entice the minor, such as discussing specific sex acts that he would like to perform with the intended victim, sending sexually explicit photographs, and making firm arrangements to meet. *See, e.g., Yost*, 479 F.3d at 820 (finding that the defendant "crossed the line from mere 'talk' to inducement" when he chatted online with the 13-year-old victim, spoke with her on the phone, sent her pictures of his genitalia, and made arrangements to meet her); *United States v. Cramer*, 789 F. App'x 153, 155 (11th Cir. 2019) ("The totality of Cramer's conduct demonstrates he took a substantial step toward inducing Paisley's assent to sexual activity, including his communications with the stepmother, the photographs he sent, his detailed description of the sexual acts he planned to do with Paisley, his efforts to arrange a meeting, and his repeated concerns about law enforcement."). It is not necessary to prove that the defendant actually traveled to meet his intended minor victim. *United States v. Orr*, 819 F. App'x 756 (11th

Cir. 2020) ("Although Mr. Orr did not travel to meet with [the minor victim], he emailed and texted extensively with an undercover officer posing as both a would-be minor victim and her uncle . . . [and] repeatedly asked for sexually explicit photos of the minor, discussed sex with the purported minor, and described the sexual acts he wanted to perform with her and on her.").[1] When determining whether the evidence supports a finding that the defendant took a substantial step in the enticement of a minor, the court evaluates the defendant's conduct in its totality. *Lee*, 603 F.3d at 916. Generally, the same evidence that establishes a defendant's intent also demonstrates his taking of substantial steps. *United States v. Farley*, 607 F.3d 1294, 1334 (11th Cir. 2010).

The evidence presented at the defendant's trial established beyond a reasonable doubt that he had the intent to cause Shayla's assent to engage in sexual activity and that he took a substantial step to gain that assent. The defendant's own statements initiating the conversation with Shayla on Whisper establish his intent to meet *someone* for a sexual encounter on January 9, 2022. It was the defendant who first raised the idea of meeting for sex, asking Shayla if she liked to "smoke and fuck," and stating, "Maybe we can get together sometime." (GX14: 3). Despite having the ability

---

[1] The Eleventh Circuit is not alone in this assessment; other circuits to have considered the necessity of travel have reached the same conclusion. *See United States v. Howard*, 766 F.3d 414, 426-27 (5th Cir. 2014) ("[A] rational trier of fact could have found that Howard's 'grooming behavior'—against the backdrop of Howard's conversations with [the undercover officer] and together with his specific discussions about travel and transmittal of sexually explicit photographs with instructions they be shown to the girls—constituted a substantial step."); *United States v. Bailey*, 228 F.3d 637, 639-40 (6th Cir. 2000) (affirming conviction under §2422(b) where the defendant sent emails to minor females proposing meeting for oral sex and attempted, unsuccessfully, to arrange said meetings); *United States v. Zawada,* 552 F.3d 531 (7th Cir. 2008) (affirming attempted enticement conviction where the defendant did not travel to the proposed meeting location, but had a "relatively concrete" conversation in an Internet chat room about making a date with the intended minor victim, discussed a specific date and time of day that they thought would work, and discussed whether the defendant should bring condoms to the meeting); *United States v. Thomas*, 410 F.3d 1235, 1246 (10th Cir. 2005) ("Thomas crossed the line from 'harmless banter' to inducement the moment he began making arrangements to meet [the minor], notwithstanding the lack of evidence that he traveled to the supposed meeting place.").

to remain anonymous on Whisper, the defendant sent his actual photograph and used his real name in an effort to prove to Shayla that he was real and serious about meeting in person. (GX14:2).

The defendant argues that the fact that he did not know a minor was involved when he first responded to Shayla's Whisper post shows that he had no intent to entice a minor to engage in sexual activity. (DE56: 5-6). The defendant's argument completely ignores, however, all his conduct *after* learning that Shayla was a 14-year-old girl. Although the defendant initially indicated that Shayla's age was "a problem," he immediately wavered on this position by asking Shayla, "What's the oldest you've fucked[?]" and asking for details of her prior sexual encounters with older men, which he told her he found "interesting." (GX14: 3). He also asked her for a photograph and complimented her appearance, further signaling his interest in wooing her. (GX14: 4-5).

Significantly, the defendant did not end the conversation or change its sexual nature upon learning that he was communicating with a 14-year-old girl. Instead, the defendant made a more concentrated effort to entice her to meet him for sex. Prior to learning her age, the defendant noncommittally stated that "[m]aybe" they could meet up "sometime." (GX14:3). However, after learning that Shayla was 14 years old and alone at the movie theater that night, the defendant proposed a specific sexual encounter at the theater that same evening. The defendant told Shayla that she should have invited him to the movie so that he could "finger" her in the back row of the theater and described to her in graphic detail what he would do to her if she agreed to meet him. (GX14: 7). The defendant made these comments without any sexual prodding or innuendo from Shayla.

In fact, when Shayla told the defendant not to tease her if he was not planning on following through, he assured he that he was serious about meeting her. (GX14:7) (Defendant: "And what if

7

I don't stop. And what if I actually will do it?"). The defendant then asked Shayla if she would "slide that tight little pussy down on my thick cock in the theater" and show him "what [she] can do with those lips and [her] tongue" before sending her a photograph of his erect penis and telling her it was "begging" for sexual contact with her. (GX14: 7-8). The Eleventh Circuit has previously found similar requests for a minor to perform sex acts and the sending of explicit images to constitute substantial steps in the commission of § 2422(b) offenses. *See*, *e.g.*, *United States v. Farley*, 607 F.3d 1294, 1334 (11th Cir. 2010) ("[E]ach of Farley's instructions to Stephanie to 'groom' her daughter for sexual contact with him were not just statements of his intent, but actual, objective acts that strongly corroborate his culpability.") (internal quotation marks omitted); *Yost*, 479 F.3d at 819-20 (finding that the defendant's sending of sexually explicit messages and pictures of his penis to minor were objective acts strongly corroborating the defendant's intent); *United States v. Root*, 296 F.3d 1222, 1228 (11th Cir. 2002) (finding that defendant's repeated requests for the minor victim to "kiss him, touch his genitalia, perform and receive oral sex, and engage in sexual intercourse with him" were substantial steps that "provide[d] unequivocal evidence of Root's culpability").

     The defendant then proceeded to further solidify his plans to meet with Shayla that night at the movie theater by exchanging phone numbers with her so they could text more easily off the Whisper app, giving her his exact estimated time of arrival – down to the minute, coordinating where to meet her, and requesting an additional photograph of Shayla so he knew who to look out for when he arrived (GX14: 8-10). The setting of these specific plans to meet and the request for Shayla to confirm her identity constitute additional substantial steps corroborating the defendant's intent to entice Shayla by showing her that he was serious about meeting her. *See Yost*, 479 F. 3d at 820 (finding that the defendant's making arrangements to meet with the intended minor victim

constituted a substantial step, despite the defendant's subsequent failure to follow through with the in-person meeting).

The defendant also points to Shayla's openness to his advances as somehow evidence that he lacked the requisite intent to entice her. This argument is a nonstarter, as the victim's intent is irrelevant to the enticement calculus. Section 2422(b) does not require the government to prove that the victim's will was overborne by the defendant's efforts, or even that his efforts at enticement were successful. *United States v. Waqar*, 997 F.3d 481, 488 (2d Cir. 2021) ("Accordingly, we hold that 18 U.S.C. § 2422(b) imposes no requirement that an individual endeavor to 'transform or overcome' the will of his intended victim."); *see United States v. Rutgerson*, 822 F.3d 1223, 1233 (11th Cir. 2016) ("To the extent that Rutgerson suggests that an underage prostitute who holds herself out for sex cannot be induced within the meaning of § 2422(b) as a matter of law, he is mistaken."). This is because the locus of the offense is the "intent and actions of the would-be persuader," not the "effect of his words and deeds on his would-be victim." *Waqar*, 997 F.3d at 487; *see also Rutgerson*, 822 F.3d at 1234 ("The essential point is that Rutgerson attempted to persuade or induce Amberly to engage in sex with him by offering to pay her money (and a substantial amount at that) for her services.").

Further, the defendant's contention that he "made no effort to persuade, induce, or coerce Shayla into consenting to sexual activity" is patently false. It was the defendant who, after learning that Shayla was 14, first raised the idea of meeting at the theater for sex. He pressured Shayla into inviting him to join her with promises of sexual gratification and described in graphic detail what he would do if she agreed to meet him. He sent her a photo of his erect penis and described what he wanted her to do with it. And then, when Shayla questioned his commitment to the meeting, the defendant demonstrated how serious he was by setting a firm meeting time and telling Shayla

he was on his way to the theater. Given all the objective acts the defendant undertook in furtherance of his attempt to entice Shayla to meet with him that night, the fact that he encountered a receptive victim is simply irrelevant to his criminal culpability.

## CONCLUSION

Although the defendant argues that he "did not go onto Whisper looking for an underage girl to have sex with" (DE56:10), he certainly did not cease his sexual pursuit of Shayla upon learning her real age. Instead, the defendant performed numerous objective acts in his conversation with Shayla that demonstrated his criminal intent to entice her to engage in sex acts with him on the night of January 9, 2022, including making concrete plans to meet her in the theater parking lot for sex in his car. That Shayla was subsequently unable to prove her identity to the defendant's satisfaction and he ultimately decided to abort the planned meeting is irrelevant, as the defendant had already taken sufficient substantial steps to strongly corroborate his intent to entice Shayla to engage in sexual activity. Viewed in the light most favorable to the government and the jury's verdict, the evidence presented at trial established the defendant's guilt beyond a reasonable doubt. Therefore, the defendant's motion for judgment of acquittal should be denied.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: /s/ Stacey Bergstrom
Stacey Bergstrom
Assistant United States Attorney
Southern District of Florida
Court ID No. A5502614
101 South U.S. 1, Suite 3100
Ft. Pierce, Florida 34950
Telephone: (772) 466-0899
E-mail: stacey.bergstrom@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified.

*s/Stacey Bergstrom*
Stacey Bergstrom A5502614
Assistant United States Attorney

## SERVICE LIST
United States v. Zachary S. Spiegel
Case No. 22-CR-14005-AMC
United States District Court
Southern District of Florida

| Party | Counsel |
|---|---|
| Plaintiff:<br>United States | Stacey Bergstrom A5502614<br>Assistant United States Attorney<br>101 South US Highway 1, Suite 3100<br>Fort Pierce, Florida 34950<br>Email: Stacey.Bergstrom@usdoj.gov<br>**via Notice of Electronic Filing generated by CM/ECF** |
| Defendant:<br>Zachary S. Spiegel | Donnie Murrell, Esq.<br>400 Executive Center Drive<br>Suite 201 – Executive Center Plaza<br>West Palm Beach, Florida 33401<br>Email: ldmpa@bellsouth.net<br><br>Andrew B. Metcalf, Esq.<br>1245 20th Street<br>P.O. Box 2618<br>Vero Beach, Florida 32961<br>Email: la@eaglelaw.com<br><br>**via Notice of Electronic Filing generated by CM/ECF** |